1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON

|  |  |
|---|---|
|  | Case No. 13-CV-03122 (VEB) |
| SUSAN JANE CATRON, | |
| Plaintiff, | DECISION AND ORDER |
| vs. | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

## I. INTRODUCTION

In May of 2011, Plaintiff Susan Jane Catron applied for Disability Insurance Benefits ("DIB") under the Social Security Act. The Commissioner of Social Security denied the application.

1    Plaintiff, represented by Cory J. Brandt, Esq., commenced this action seeking

2    judicial review of the Commissioner's denial of benefits pursuant to 42 U.S.C. §§

3    405 (g) and 1383 (c)(3).  The parties consented to the jurisdiction of a United States

4    Magistrate Judge. (Docket No. 5).

5    On June 30, 2014, the Honorable Rosanna Malouf Peterson, Chief United

6    States District Judge, referred this case to the undersigned pursuant to 28 U.S.C. §

7    636(b)(1)(A) and (B). (Docket No. 24).

8

9    ## II. BACKGROUND

10    The procedural history may be summarized as follows:

11    On May 25, 2011, Plaintiff applied for DIB, alleging disability beginning May

12    29, 2010. (T at 203-207, 208-11).[1]  The application was denied initially and Plaintiff

13    requested a hearing before an Administrative Law Judge ("ALJ").  On June 17,

14    2013, a hearing was held before ALJ Ilene Sloan. (T at 3).  Plaintiff appeared with

15    her attorney and testified. (T at 9-19). The ALJ also received testimony from

16    Frederick Cutler, a vocational expert (T at 22-29).

17    On June 23, 2013, ALJ Sloan issued a written decision denying the

18    application for benefits and finding that Plaintiff was not disabled within the

19    [1] Citations to ("T") refer to the administrative record at Docket No. 14.

20

DECISION AND ORDER – CATRON v COLVIN 13-CV-03122-VEB

meaning of the Social Security Act.  (T at 91-109).   The ALJ's decision became the Commissioner's final decision on August 27, 2013, when the Social Security Appeals Council denied Plaintiff's request for review.  (T at 110-13).

On October 28, 2013, Plaintiff, acting by and through her counsel, timely commenced this action by filing a Complaint in the United States District Court for the Eastern District of Washington. (Docket No. 8). The Commissioner interposed an Answer on January 21, 2014. (Docket No. 13).

Plaintiff filed a motion for summary judgment on June 5, 2014. (Docket No. 22).  The Commissioner moved for summary judgment on August 15, 2014. (Docket No. 28).  Plaintiff filed a reply brief on August 30, 2014. (Docket No. 29).

For the reasons set forth below, the Commissioner's motion is denied, Plaintiff's motion is granted, and this case is remanded for calculation of benefits.

### III. DISCUSSION

**A.    Sequential Evaluation Process**

The Social Security Act ("the Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve

DECISION AND ORDER – CATRON v COLVIN 13-CV-03122-VEB

months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a plaintiff shall be determined to be under a disability only if any impairments are of such severity that a plaintiff is not only unable to do previous work but cannot, considering plaintiff's age, education and work experiences, engage in any other substantial work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if the person is engaged in substantial gainful activities. If so, benefits are denied. 20 C.F.R. §§ 404. 1520(a)(4)(i), 416.920(a)(4)(i). If not, the decision maker proceeds to step two, which determines whether plaintiff has a medially severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If plaintiff does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares plaintiff's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); 20

C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, plaintiff is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents plaintiff from performing work which was performed in the past. If a plaintiff is able to perform previous work that plaintiff is deemed not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, plaintiff's residual functional capacity (RFC) is considered. If plaintiff cannot perform past relevant work, the fifth and final step in the process determines whether plaintiff is able to perform other work in the national economy in view of plaintiff's residual functional capacity, age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon plaintiff to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once plaintiff establishes that a mental or physical impairment prevents the performance of previous work. The burden then shifts, at step five, to the Commissioner to show that (1) plaintiff can perform other substantial gainful

activity and (2)  a "significant number of jobs exist in the national economy" that plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

**B.    Standard of Review**

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold a Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983)(citing 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-02 (9th Cir. 1989). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebreeze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman*

*v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989)(quoting *Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the Commissioner, not this Court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

## C.    Commissioner's Decision

ALJ Sloan noted that Plaintiff filed a prior application for benefits on January 9, 2007. (T at 94). That application was denied after hearing by an ALJ in a decision dated May 28, 2010. The Appeals Council denied review and the matter was (at the time of ALJ's Sloan's decision) pending review in federal district court.

1    (T at 94).[2]  For the sake of clarity, the following references to the "ALJ" refer to

2    ALJ Sloan and her June 23, 2013 decision.

3        The ALJ found that Plaintiff had not engaged in substantial gainful activity

4    since May 29, 2010, the alleged onset date, and met the insured status requirements

5    of the Social Security Act through December 31, 2011 (the "date last insured"). (T at

6    97). The ALJ determined that Plaintiff's anxiety disorder and major depressive

7    disorder were "severe" impairments under the Act. (Tr. 97).

8        However, the ALJ concluded that Plaintiff did not have an impairment or

9    combination of impairments that met or medically equaled one of the impairments

10   set forth in the Listings. (T at 97-99).  The ALJ determined that, as of the date last

11   insured, Plaintiff retained the residual functional capacity ("RFC") to perform a full

12   range of work at all exertional levels, but would be limited to understanding,

13   remember, and carrying out simple, repetitive tasks and could have only superficial

14   contact with co-workers and no contact with the general public. (T at 99-103).

15       The ALJ concluded that Plaintiff could not perform her past relevant work as

16   an administrative clerk, invoice control clerk, truck driver sales route, or

17   promotional representative - sales. (T at 103).  Considering Plaintiff's age (48 on the

---

18   [2] On July 23, 2013, the Honorable Cynthia Imbrogno, United States Magistrate Judge, issued an
     Order remanding Plaintiff's prior application for further proceedings. (Docket No. 28, in case

19   number 12-CV-03008).

20

DECISION AND ORDER – CATRON v COLVIN 13-CV-03122-VEB

date last insured), education (high school), work experience, and RFC (no exertional limitations, with non-exertional limitations outlined above), the ALJ concluded that, as of the date last insured, there were jobs that exist in significant numbers in the national economy that Plaintiff can perform. (T at 103-104).

As such, the ALJ concluded that Plaintiff was not disabled, as defined under the Act, between May 29, 2010 (the alleged onset date) and December 31, 2011 (the date last insured) and was therefore not entitled to benefits. (Tr. 105). As noted above, the ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. (Tr. 110-13).

**D.    Plaintiff's Arguments**

Plaintiff contends that the Commissioner's decision should be reversed. First, she argues that the ALJ did not properly assess the medical opinions. Second, Plaintiff challenges the ALJ's credibility determination. Third, Plaintiff contends that she was deprived of due process. Fourth, she asserts that the ALJ's step five analysis was flawed. This Court will examine each argument in turn.

DECISION AND ORDER – CATRON v COLVIN 13-CV-03122-VEB

# IV. ANALYSIS

## A.     Medical Opinion Evidence

In disability proceedings, a treating physician's opinion carries more weight than an examining physician's opinion and an examining physician's opinion is given more weight than that of a non-examining physician. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If the treating or examining physician's opinions are not contradicted, they can be rejected only for clear and convincing reasons. *Lester*, 81 F.3d at 830. If contradicted, the opinion can only be rejected for "specific" and "legitimate" reasons supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).

Dr. Sandra Saffran, a mental health professional, had a lengthy treating relationship with Plaintiff.  (T at 317).  In April of 2010, Dr. Saffran prepared a letter outlining her assessment of Plaintiff's mental health condition and limitations.  She noted a diagnosis of post-traumatic stress disorder ("PTDS") and reported that Plaintiff's course of care had been "sporadic and riddled with imposed obstacles." (T at 317).   In particular, Plaintiff cancelled appointments at the last minute, prevaricated, and manipulated her medication regime. (T at 317).   Plaintiff often needed a family member to accompany her to therapy sessions. (T at 317).

DECISION AND ORDER – CATRON v COLVIN 13-CV-03122-VEB

Dr. Saffran explained that Plaintiff's PTSD arose from several traumatic events in her life, including a sexual assault, workplace sexual harassment, and a sibling's attempted suicide. (T at 317). Plaintiff experienced symptoms of hyper-arousal or heightened anxiety, flashbacks, nightmares, hypervigilance, mood swings, irrational/excessive anger, and intrusive memories. (T at 318). These symptoms caused difficulties in social functioning, paranoia, and fear of leaving the home. (T at 318). Eventually, her symptoms increased to the point at which she was completed isolated and withdrawn from society. (T at 319).

According to Dr. Saffran, Plaintiff now experiences sleep problems, an exaggerated startle response, and an inability to sit still for any length of time. (T at 319). She is unable to care for herself and requires the assistance of her mother to attend to activities of daily living. (T at 319). She is unable to drive, does not leave the house, and does not attend to personal care needs. (T at 319). Dr. Saffran opined that Plaintiff was unable to function appropriately in the workplace. (T at 320).

At the same time, Dr. Saffran completed a medical source statement of ability to do work-related activities (mental) form. She opined that Plaintiff had extreme limitations with respect to (1) understanding, remembering, and carrying out instructions and (2) interacting appropriately with supervisors, co-workers, and the public, and responding to changes in a routine work setting. (T at 324-25).

DECISION AND ORDER – CATRON v COLVIN 13-CV-03122-VEB

In July of 2012, Dr. Saffran completed another mental medical source statement.  She assessed moderate limitations with regard to understanding and memory and sustained concentration and persistence. (T at 330-31).  She found marked limitations as to social interaction and adaption skills. (T at 331-32).

The ALJ gave "little weight" to Dr. Saffran's assessments. (T at 102).  This Court has no hesitancy in finding that the ALJ's consideration of Dr. Saffran's assessments was flawed, not consistent with applicable law, and not supported by substantial evidence.

The ALJ found that Dr. Saffran was not a "treating source" because, although she holds a PhD and practices as a mental health professional, Dr. Saffran is (apparently) not a licensed or certified psychologist in the State of Washington. (T at 102).  The ALJ then proceeded to refer to Dr. Saffran as "Ms. Saffran" through the balance of the decision. (T at 102).

The Social Security Regulation divide medical sources into two categories: "acceptable" and "not acceptable." 20 C.F.R. § 404.1502. Acceptable medical sources include "[l]icensed or certified psychologists." 20 C.F.R. § 404.1513 (2). Medical sources classified as "not acceptable" include, but are not limited to, nurse practitioners, therapists, licensed clinical social workers, and chiropractors. 20 C.F.R. § 404.1513 (d).

DECISION AND ORDER – CATRON v COLVIN 13-CV-03122-VEB

It does appear that, in fact, Dr. Saffran is not a licensed or certified psychologist in the State of Washington.  Rather, she practices as a psychiatric nurse practitioner. (T at 102).[3]  As such, this Court finds no error in the ALJ's conclusion that Dr. Saffron was not an "acceptable" medical source. *See Mashtare v. Astrue*, No. CV-09-0346, 2011 U.S. Dist. LEXIS, at *13 n.2 (E.D.Wa. Jan. 4, 2011).

However, "other source" opinions cannot be ignored and must be evaluated on the basis of the source's qualifications, whether their opinions are consistent with the record evidence, the evidence provided in support of their opinions, and whether the other source is "has a specialty or area of expertise related to the individual's impairment." *See* SSR 06-03p, 20 CFR §§404.1513 (d), 416.913 (d).  The ALJ must give "germane reasons" before discounting an "other source" opinion. *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).

---

[3] Plaintiff notes that the ALJ obtained the information concerning the status of Dr. Saffran's licensing from evidence outside of the administrative record, in particular, from testimony she provided during the hearing on Plaintiff's prior application for benefits. (T at 102).  However, there appears to be no material dispute on this point.  As the Commissioner notes, the accuracy of the ALJ's information concerning Dr. Saffran's credentials is verified by the Washington State Department of Health's website (which provides a "provider credential search").  The ALJ could have taken judicial notice of the Department of Health's records. *See generally Kottle v. Nw. Kidney Ctrs*, 146 F.3d 1056, 1064 n.7 (9th Cir. 1998).  A remand simply to allow the ALJ to take such notice would serve no purpose. *See Hubbard v. Comm'r of Soc. Sec.*, 348 Fed. Appx. 551, 553 n. 1 (11th Cir. 2009)("There would be little value in remanding this case just so that the ALJ may place the specific provisions of the DOT into the record. Therefore, we take judicial notice of the fact that Hubbard's past relevant work is classified as light in exertion according to the DOT.").

DECISION AND ORDER – CATRON v COLVIN 13-CV-03122-VEB

Here, Dr. Saffran has a specialty in the area of mental health, which certainly relates to the area of impairment. She had a lengthy treating relationship with Plaintiff (over four years). (T at 317). A review of the reasons cited by the ALJ for discounting Dr. Saffran's assessment demonstrates that they are, individually and collectively, not "germane" and therefore not sufficient to satisfy the applicable legal standard.

First, the ALJ incorrectly concluded that Dr. Saffron's "opinions include[d] very little explanation or citation to objective medical evidence in support of her conclusions," which (the ALJ found) "significantly undermine[d] the value of her statements." (T at 102). A cursory review of the record shows that the ALJ's conclusion is not sustainable. Dr. Saffron's April 2010 letter provides four (4) pages of single-spaced text explaining her detailed assessment of Plaintiff's mental health impairment. (T at 317-20). In addition, Dr. Saffron's July 2012 medical questionnaire contains detailed comments explaining her assessment. (T at 332). These assessments are based on Dr. Saffron's mental health experience and clinical observations of Plaintiff over a period that lasted several years. The assessments are consistent with Dr. Saffron's contemporaneous treatment notes. (T at 303, 305, 306). It is not clear what sort of additional "objective medical evidence" the ALJ believed

DECISION AND ORDER – CATRON v COLVIN 13-CV-03122-VEB

was necessary to support an assessment provided by a medical source with that treating relationship and those qualifications.

Second, the ALJ improperly discounted Dr. Saffron's April 2010 assessments because they were generated prior to May 29, 2010, the start of the relevant period.[4] (T at 102).  Although evidence that pre-dates the relevant time period *may* be of limited relevance, *see Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d. 1155, 1165 (9th Cir. 2008), it cannot be automatically or casually disregarded on this basis.  *See Manteau v. Colvin*, No. CV 12-1153, 2013 U.S. Dist. LEXIS 49266, at *9-*11 (C.D.Ca. Apr. 4, 2013).  Here, the April 2010 assessments were rendered barely a month before the beginning of the relevant time period.  Those assessments make it clear that Dr. Saffran, a mental health professional with a lengthy treating relationship with Plaintiff, believed Plaintiff's mental health issues were pervasive, long-standing, and unlikely to improve with treatment. (T at 317-20).

In addition, the ALJ apparently believed she was barred from considering the April 2010 assessments because they had been "discredited" by the ALJ considering Plaintiff's prior application for benefits. (T at 102).  In so doing, the ALJ failed to consider Dr. Saffran's April 2010 assessments in light of the evidence developed

---

[4] Plaintiff's prior application for benefits was denied in an ALJ decision rendered on May 28, 2010.  Thus, the issue for this ALJ was whether Plaintiff was disabled on or after May 29, 2010.

DECISION AND ORDER – CATRON v COLVIN 13-CV-03122-VEB

after the first ALJ's decision, which (as discussed below) provided additional support for Dr. Saffran's conclusions.

To make matters worse, the ALJ then explained that she was discounting Dr. Saffran's July 2012 assessment because that opinion was rendered after December 31, 2011 (the date last insured). (T at 102-103). The ALJ found "no indication [Dr.] Saffran felt [Plaintiff] was experiencing this level of limitation prior to December 31, 2011, or during the relevant time period." (T at 103). This conclusion ignores both the April 2010 assessments and reads the July 2012 incorrectly. As discussed above, the April 2010 assessments establish without doubt Dr. Saffran's view that Plaintiff was "experiencing this level of limitation" prior to the date last insured. It was likewise quite clear that Dr. Saffran's July 2012 report is describing the same condition, which obviously existed prior to the date last insured. In particular, Dr. Saffran explained that Plaintiff "*continues* to re-experience symptoms associated with PTSD," and then described essentially the same symptoms she identified in her April 2010 assessments. (T at 332)(emphasis added).

It is well-settled that medical reports "containing observations made after the period for disability are relevant to assess the claimant's disability." *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988) (citing *Kemp v. Weinberger*, 522 F.2d 967, 969 (9th Cir. 1975)); *see also Lingenfelter v. Astrue*, 504 F.3d 1028, 1034 n.3 (9th Cir.

DECISION AND ORDER – CATRON v COLVIN 13-CV-03122-VEB

2007) (noting that "reports containing observations made after the period for disability are relevant to assess the claimant's disability"). Here, the July 2012 assessment clearly related to the relevant time period and should not have been discounted.

Third, the ALJ improperly discounted the significance of Plaintiff's symptoms based on the fact that she received "minimal treatment" for her mental health conditions. (T at 100). In particular, the ALJ believed that "[g]iven the alleged severity of [Plaintiff's] symptoms, it is reasonable to expect she would have sought out additional treatment." (T at 100). Under the circumstances, the ALJ's expectation was, in fact, quite *un*reasonable.

An ALJ must not draw an adverse inference from a claimant's failure to seek treatment "without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." SSR 96-7p*; see also Dean v. Astrue*, No. CV-08-3042, 2009 U.S. Dist. LEXIS 62789, at *14-15 (E.D. Wash. July 22, 2009)(noting that "the SSR regulations direct the ALJ to question a claimant at the administrative hearing to determine whether there are good reasons for not pursuing medical treatment in a consistent manner").

DECISION AND ORDER – CATRON v COLVIN 13-CV-03122-VEB

1        An ALJ's duty to develop the record in this regard is significant because there

2    are valid reasons why a claimant might not seek treatment. For example, "financial

3    concerns [might] prevent the claimant from seeking treatment [or] . . . . the claimant

4    [may] structure[] his daily activities so as to minimize symptoms to a tolerable level

5    or eliminate them entirely." *Id.*

6        Here, the record contained probative evidence establishing valid reasons why

7    Plaintiff did not seek treatment at the level that might expected given the severity of

8    her symptoms.   Dr. Saffran explained that Plaintiff was "emotionally crippled,"

9    incapable of driving, and afraid to leave home, which interfered with both her ability

10   to seek treatment and comply with treatment recommendations. (T at 317).   Dr.

11   Saffran believed that Plaintiff lacked "the ego strength necessary to resolve the

12   multiple stressors associated with her traumatic events." (T at 320, 332).   She also

13   noted Plaintiff's "financial limitations," which made it "difficult for her to receive

14   optimal treatment for her condition." (T at 332).   The ALJ erred in failing to give

15   appropriate consideration to these factors, which provided context for Plaintiff's

16   failure to seek consistent mental health treatment.

17       Fourth, the ALJ did not give sufficient consideration to the correspondence

18   between Dr. Saffran's assessments and the opinion rendered by Dr. Jesse

19   McClelland, a psychiatric consultative examiner.   In an October 2011 report, Dr.

20

DECISION AND ORDER – CATRON v COLVIN 13-CV-03122-VEB

McClelland diagnosed attention deficit hyperactivity disorder (combined type), PTSD, major depressive disorder (severe, recurrent), and alcohol abuse (in sustained, full remission). (T at 290). He assigned a Global Assessment of Functioning ("GAF") score[5] of 32 (T at 290), which "indicates some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) or major impairment in several areas such as work or school, family relations, judgment, thinking or mood." *Tagin v. Astrue*, No. 11-cv-05120, 2011 U.S. Dist. LEXIS 136237 at *8 n.1 (W.D.Wa. Nov. 28, 2011)(citations omitted).

Although Dr. McClelland believed Plaintiff could perform some simple and repetitive tasks, he believed she would struggle with maintaining regular attendance in the workplace due to agoraphobia. (T at 290-91). He also expected interruptions in a normal workday due to anxiety or depression. (T at 291). Dr. McClelland questioned Plaintiff's ability to deal with work stress as "she lacks mature coping skills and does not deal well with stress or change." (T at 291).

The ALJ discounted Dr. McClelland's opinion, believing that the examiner did not review any of Plaintiff's medical records. (T at 101). It is true that, on the section of his report labeled "Review of Records," Dr. McClelland indicated "none."

---

[5] "A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." *Vargas v. Lambert*, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998).

(T at 286).  However, there is good reason to believe this was a clerical error.  Later in the report, Dr. McClelland describes Plaintiff's remote memory skills regarding her medical history as "correlating with medical records provided." (T at 289).  This suggests that Dr. McClelland did review medical records, but there is no indication that the ALJ contacted Dr. McClelland to clarify this point.  Moreover, even assuming *arguendo* that Dr. McClelland did not review any records, there would be good reason to believe he would have rendered an even *more* restrictive assessment had he reviewed, for example, Dr. Saffran's April 2010 reports.

The ALJ also curiously faults Dr. McClelland for relying on Plaintiff's "subjective statements" to establish her panic attacks and difficulties leaving home. (T at 102). However, the consultative examiner is obviously not required to *personally witness* a symptom to make an assessment of a claimant's condition (or to conclude that a claimant likely suffers from the symptom).  Indeed, unless the examiner travelled to Plaintiff's home, it would be impossible for him to "observe" her difficulty in leaving that setting.

Here, Plaintiff's difficulties are well-documented in reports and records from her treating mental health provider. (T at 303, 305, 306, 317-20, 331-32).  Dr. McClelland also had the opportunity to speak with Plaintiff and assess the credibility of her complaints.  Indeed, "a patient's complaints or reports of [her] complaints, or

history, is an essential diagnostic tool." *Williams v. Colvin*, 13-03005, 2014 U.S. Dist. LEXIS 6244, at *33 (E.D.Wa. Jan. 15, 2004). This was not a proper basis for discounting the consultative examiner's assessment.

Accordingly, this Court has no hesitancy in finding reversible error in the ALJ's assessment of the opinions provided by Dr. Saffran, a mental health provider with a lengthy treating relationship, particularly given the correspondence between her assessment, the treatment notes, and the opinion of Dr. McClelland, the consultative examiner. The ALJ also improperly faulted Plaintiff for failing to seek mental health treatment and ignored evidence explaining Plaintiff's difficulties with seeking such treatment. The ALJ also adopted an unduly formalistic view of the evidence, discounting assessments from immediately prior to and shortly after the relevant time period, even though the evidence had obvious relevance to the period at issue. The ALJ's decision cannot be sustained.

## B. Credibility

A claimant's subjective complaints concerning his or her limitations are an important part of a disability claim. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004)(citation omitted). The ALJ's findings with regard to the claimant's credibility must be supported by specific cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Absent affirmative evidence of

malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Leste*r, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

In this case, Plaintiff testified as follows:

She lives with her mother, who attends to household bills. (T at 10). She has a hard time sitting and "getting from A to B." (T at 13). A family member transports her to appointments with Dr. Saffran, but she has trouble attending all of the appointments because of anxiety. (T at 13). She takes a prescription medication (Celexa) for anxiety, which seems to help. (T at 13-14). She has good days and bad. (T at 15). Most days she watches television, visits with family, and performs some gardening. (T at 15). She has friends, but had difficulty describing their activities together. (T at 16-17). She does not shop, reads occasionally, and sometimes prepares simple foods. (T at 18). Plaintiff apparently had a panic attack during her testimony at the administrative hearing, indicated that she could not continue, and left the room. (T at 20-22).

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that her

DECISION AND ORDER – CATRON v COLVIN 13-CV-03122-VEB

statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely credible. (T at 100).

This Court finds that the ALJ's credibility assessment cannot be sustained. First, the ALJ placed undue emphasis on Plaintiff's activities of daily living. These activities (occasional driving, attending church, performing light household chores, socializing with family) have limited, if any, relevance with respect to Plaintiff's ability to handle the stress demands of competitive, remunerative work.

The Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities ... does not in any way detract from her credibility as to her overall disability." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (quoting *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001)). Moreover, individuals with chronic mental health problems "commonly have their lives structured to minimize stress and reduce their signs and symptoms." *Courneya v. Colvin*, No. CV-12-5044, 2013 U.S. Dist. LEXIS 161332, at *13-14 (E.D.W.A. Nov. 12, 2013)(quoting 20 C.F.R. Pt. 404, Subp't P, App. 1 § 12.00(D)).

"The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication." *Fair v. Bowen*, 885

F.2d 597, 603 (9th Cir. 1989); *see also Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012)("The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . ., and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases.")(citations omitted).

Second, the ALJ improperly discounted Plaintiff's credibility based on the frequency of her mental health treatment. (T at 100). As outlined above, the ALJ failed to consider evidence suggesting that Plaintiff's failure to attend treatment was the result of psychological and financial factors.  (T at 317, 330, 332).  Moreover, as a general matter, "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir.1996)(quoting *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir.1989)).

Third, the ALJ cited a series of "inconsistencies" in Plaintiff's testimony that were, in fact, manifestly minor in nature and readily explained.  For example, the ALJ noted Plaintiff's testimony that she had difficulty leaving the house and found it inconsistent with a report that Plaintiff took her daughter to the emergency room in

early 2012. (T at 101). However, Plaintiff did not testify that she was completely unable to leave the house; in fact she discussed driving on occasion and being taken by family members to sessions with Dr. Saffran. (T at 13).   Thus, there was no contradiction.   Moreover, the fact that Plaintiff could summon the strength to leave the house to obtain *emergency* medical care *after finding that her daughter had attempted suicide* hardly undermines Plaintiff's testimony that she has difficulty leaving the house. (T at 302).   Indeed, Dr. Saffran reported that Plaintiff's trip to the emergency room with her daughter brought on a "big anxiety attack" (T at 302), a fact the ALJ failed to mention.

The ALJ also noted that, when questioned at the administrative hearing, Plaintiff was unable to describe the activities she engages in with her friends. (T at 101). The ALJ might have considered, but did not, the fact that Plaintiff was apparently in the midst of a panic attack during the administrative hearing, which eventually forced her to leave the room. (T at 21-22).

The ALJ also found it significant that the record contained several references to Plaintiff having "financial problems," which (the ALJ believed) "raise[d] the issue of secondary gain." (T at 101).   As an example, the ALJ cited evidence that Plaintiff was at risk of losing her home and was concerned that she would not have sufficient funds to hire an attorney. (T at 101).   It is quite honestly hard to understand how the

ALJ could possibly have cited these factors as reasons for discounting Plaintiff's credibility, especially in the absence of any indication of malingering from Dr. Saffran and Dr. McClelland.

Plaintiff alleges that she suffers from debilitating mental health symptoms (including difficulty even leaving her house), which render her unable to work.  It would be surprising indeed if Plaintiff did *not* have financial problems.  Plaintiff is seeking Social Security benefits to ameliorate the financial burdens caused by her inability to work.  This hardly makes her unique among claimants and, indeed, this is the very purpose of having a system that provides such benefits in the first place. *See Edgar v. Astrue*, No. 08-6379-AC, 2010 U.S. Dist. LEXIS 69226, 2010 WL 2730927, at *5 (D. Or. June 2, 2010) ("The ALJ may not chastise a claimant for seeking disability benefits payments; such reasoning circumvents the very purpose of disability benefit applications"); *Walker v. Colvin*, No. CV 12-2248, 2013 U.S. Dist. LEXIS 46260, at *18-19 (C.D.Ca. Mar. 28, 2013)("[B]eing under 'financial pressure' is not a legitimate reason for disbelieving plaintiff's subjective allegations.").

Lastly, Plaintiff's allegations were supported by the opinions provided by Dr. Saffran and Dr. McClelland, which the ALJ improperly discounted for the reasons outlined above.

DECISION AND ORDER – CATRON v COLVIN 13-CV-03122-VEB

1    Accordingly, this Court finds the ALJ's credibility assessment flawed and not

2  supported by substantial evidence.

3  **C.    Due Process**

4    Plaintiff alleges that the ALJ violated her due process rights via a biased

5  decision, by continuing the hearing after she exited due to a panic attack, and by

6  limiting her counsel's cross-examination of the vocational expert.

7    "ALJs are presumed to be unbiased." *Valentine v. Comm'r Social Sec. Admin.*,

8  574 F.3d 685, 690 (9th Cir. 2009) (quoting *Rollins v. Massanari*, 261 F.3d 853, 857

9  (9th Cir. 2001)). The presumption "can be rebutted by a showing of conflict of

10  interest or some other specific reason for disqualification. . . . But expressions of

11  impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of

12  what imperfect men and women sometimes display[,] do not establish bias."

13  *Valentine*, 574 F.3d at 690 (quoting *Rollins*, 261 F.3d at 857-58). To prevail on a

14  bias claim, the claimant must show that "the ALJ's behavior, in the context of the

15  whole case, was 'so extreme as to display clear inability to render fair judgment.'"

16  *Bayliss*, 427 F.3d at 1215.

17    Although the ALJ's decision was clearly erroneous (for the reasons outlined

18  above), Plaintiff had not established that her behavior was "so extreme" as to display

19  a "clear inability to render fair judgment." *Id*, although for this Court, it is a close

20

1    call.  The ALJ engaged in a lengthy (albeit deeply flawed) discussion of the evidence

2    and reached a conclusion that she presumably believed was supported by the

3    evidence and consistent with the law.  While this may be simple (and rather obvious)

4    error and not bias, it may be a basis for requiring more training for this ALJ.

5           With regard to the conduct of the hearing, the ALJ initially granted Plaintiff a

6    brief recess to see whether her symptoms would subside. (T at 19).  Once it became

7    clear that Plaintiff could/would not remain in the room (T at 21), the ALJ continued

8    the hearing without objection from Plaintiff's counsel, but also without any evident

9    consideration as to whether it was appropriate to continue the hearing in Plaintiff's

10    absence. (T at 21-22).  The ALJ was also a bit intrusive in her oversight of counsel's

11    questioning of the vocational expert, demanding that he clarify well-known terms

12    (e.g. "simple") and inhibiting the flow of questioning. (T at 29-33).  However,

13    Plaintiff has not articulated any particular prejudice arising either from the decision

14    to continue the hearing or from the interference with counsel's questioning.

15    Moreover, any arguable prejudice is moot at this point in light of the decision by this

16    Court to remand this matter for calculation of benefits.

17  **D.**   **Step Five**

18           Plaintiff also challenges the ALJ's step five analysis.  For the reasons outlined

19    above, this Court finds this aspect of the ALJ's evaluation, which was necessarily

20

DECISION AND ORDER – CATRON v COLVIN 13-CV-03122-VEB

1    informed by her assessment of the medical opinions and evaluation of Plaintiff's

2    credibility, flawed and unsupported by substantial evidence.

3    **E.    Remand**

4          This Court has discretion to remand a case for additional evidence and

5    findings or to award benefits. *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996).

6    An award of benefits may be directed where the record has been fully developed and

7    where further administrative proceedings would serve no useful purpose. *Id*. Courts

8    have credited evidence and remanded for an award of benefits where (1) the ALJ has

9    failed to provide legally sufficient reasons for rejecting such evidence, (2) there are

10   no outstanding issues that must be resolved before a determination of disability can

11   be made, and (3) it is clear from the record that the ALJ would be required to find

12   the claimant disabled were such evidence credited. *Id*. In this case, as set forth

13   above, the ALJ's reasons for discounting the opinions of Dr. Saffran and Dr.

14   McClelland were legally insufficient. The ALJ's assessment of Plaintiff's credibility

15   was likewise flawed and not supported by substantial evidence.   There are no

16   outstanding issues and the record is fully developed. It is clear beyond all doubt that

17   the ALJ would be required to find Plaintiff disabled if the evidence outlined above

18   was credited.   Thus, a finding that Plaintiff is disabled is required. Therefore, the

19   ALJ's decision is reversed and this matter remanded for determination of benefits.

20

1

2                              **V. ORDERS**

3    **IT IS THEREFORE ORDERED** that**:**

4          Plaintiff's motion for summary judgment, **Docket No. 22**, is **GRANTED.**

5          The Commissioner's motion for summary judgment, **Docket No. 28**, is

6    **DENIED**.

7          This case is **REMANDED** to the Commissioner for calculation of benefits.

8          The District Court Executive is directed to file this Order, provide copies to

9    counsel, enter judgment in favor of the Plaintiff, and keep the case open for a period

10   of sixty (60) days to allow Plaintiff's counsel an opportunity to submit an

11   application for attorneys' fees.

12         DATED this 15th day of October, 2014.

13

14                              /s/Victor E. Bianchini
                              VICTOR E. BIANCHINI
15                      UNITED STATES MAGISTRATE JUDGE

16

17

18

19

20                                      30